IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:04CV00274 |
| | ) | |
| NANCY E. LLOYD, individually and | ) | |
| d/b/a WINGS OF FREEDOM, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

MEMORANDUM OPINION

TILLEY, Chief Judge

For the reasons set forth below, plaintiff United States of America's Motion for Summary Judgment [Doc. # 13] will be GRANTED and defendant Nancy E. Lloyd's Motion to Dismiss [Doc. # 16] will be DENIED. Ms. Lloyd's Motion for the Court to Take Judicial Notice [Doc. # 20] will be dismissed as MOOT.

I.

The United States filed its Motion for Summary Judgment on July 5, 2005. Ms. Lloyd responded by filing a Motion to Dismiss on July 25, 2005. Ms. Lloyd, a *pro se* defendant, did not respond to the Government's factual allegations in her Motion to Dismiss, but instead made a series of arguments frivolously challenging the legitimacy of the United States District Courts, the Internal Revenue Service and the United States Department of Justice. The United States responded on August 2, 2005 [Doc. # 18] and Ms. Lloyd replied on August 29, 2005 [Doc. #

1

21]. In her Reply, Ms. Lloyd continued to rely on the arguments made in her Motion to Dismiss and did not respond to the substantive allegations of the Government. She also filed a Motion on August 29, 2005 [Doc. # 20] asking the Court to take judicial notice that, among other things, district courts are not Article III courts and the IRS is not an agency of the United States. Ms. Lloyd has not contested the factual allegations of the Government in any of these pleadings.

Accordingly, the uncontested facts in this case are as follows: Ms. Lloyd markets tax evasion schemes on behalf of an organization known as the Freedom and Privacy Committee ("FPC").[1] FPC is registered as a nonprofit corporation with the state of Washington and is headquartered in Palmdale, California. The company was founded by Joseph Saladino.[2] FPC is a multilevel marketing organization that promotes several abusive tax evasion programs, including the "corporation sole" and "claim of right" programs. (Declaration of IRS Revenue Agent Cindy Allan ¶ 6.) Both of these programs have been identified by the IRS as abusive tax scams.[3] Ms. Lloyd became involved with FPC sometime in 2002 and

---

[1] This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. §§ 1340, 1345 and 26 U.S.C. §§ 7402(a), 7408. Ms. Lloyd lives and works in Greensboro, North Carolina and therefore personal jurisdiction over Ms. Lloyd is proper in this case. See Milliken v. Meyer, 311 U.S. 457, 462-63 (1940).

[2] A permanent injunction has been entered against Joseph Saladino and the Freedom and Privacy Committee. United States v. Joseph Saladino, et al., No. 04-cv-2100 FMC (JWJx) (C.D. Ca. June 20, 2005).

[3] See, e.g., IRS Warns of "Corporation Sole" Tax Scam, I.R.S. News Release IR-2004-42 (Mar. 29, 2004); Rev. Rul. 2004-29, 2004-1 C.B. 627; Rev. Rul.

served as FPC's National Support Director from May, 2003 to May, 2004. (Lloyd Dep. 12:18-13:3, May 19, 2005.) Ms. Lloyd's "corporation sole" is called "Wings of Freedom" and she conducts all of her FPC business through this entity.

In addition to her position as National Support Director, Ms. Lloyd is an FPC "subpromoter." FPC subpromoters purchase the corporation sole and claim of right programs from Mr. Saladino and FPC and then sell these packages to their customers. (Allan Decl. ¶ 7.) Customers are encouraged to become FPC subpromoters themselves and further market the FPC programs. Id. As a subpromoter, Ms. Lloyd received a $600 commission for each sale of a claim of right or corporation sole program that she made. (Lloyd Dep. 16:6-17:3.) In addition, Ms. Lloyd also received a $30 commission for all sales made by any salesperson that she introduced to FPC. (Lloyd Dep. 35:10-35:17.) According to Ms. Lloyd, she devoted approximately 30-40 hours per week to FPC matters. (Lloyd Dep. 46:1-46:19.)

The FPC tax program is marketed nationwide through internet websites, conference calls, and seminars. (Allan Decl. ¶ 8.) Each FPC subpromoter receives a personal website and a link is provided to the subpromoter's website from FPC's website. Id. Ms. Lloyd's website is **www.freedomcommittee.com/5643/5643**. (Lloyd Dep., Ex. 2.) In addition, subpromoters can develop their own marketing campaigns. Ms. Lloyd ran an advertisement in a local Greensboro paper for the

---

2004-27, 2004-1 C.B. 625.

FPC claim of right program in which she listed herself as the point of contact. (Lloyd Dep. 63:16-64:23.) FPC membership costs $200, with a $100 annual renewal fee. (Allan Decl., Ex. A at 12.) According to FPC promotional material, membership "can eliminate your personal income taxes" and permits participants to "operate a business tax free and still enjoy limited liabilities." (Allan Decl., Ex. A at 64.)

Ms. Lloyd markets the corporation sole program as a mechanism for dropping out of the tax system entirely. (Allan Decl. ¶ 15.) According to the FPC website, a corporation sole is a completely tax exempt entity and thus purchasers of the corporation sole package do not need to file tax returns of any kind. (Allan Decl., Ex. A at 57.) Ms. Lloyd tells her customers that they can treat their corporation sole as a "church" with no tax return filing requirement while, at the same time, using the assets and income of the corporation sole for their own personal benefit. (Allan Decl. ¶ 16.) She also advises them that a corporation sole can engage in any occupation, business or profession. (Allan Decl., Ex. A at 57.) The FPC website instructs its readers that once an FPC member becomes the "minister" or "overseer" of a corporation sole and takes a vow of poverty, the member can assign his or her income to the corporation sole.[4] (Allan Decl., Ex. A at 54.) This assignment effectively transforms an individual's taxable income into

---

[4] According to FPC's website, "Once you declare your pauper status, your income is tax-free to you and your assets cannot be encumbered with a property tax." (Allan Decl., Ex. A at 60.)

4

the nontaxable income of a corporation sole.  Id.  The FPC website also advises its readers that the Government cannot challenge a corporation sole's status as a church.  (Allan Decl., Ex. A at 37, 39.)

Ms. Lloyd sells the corporation sole package for $2,295.  (Allan Decl. ¶ 13; Lloyd Ans. ¶ 8.)  As part of this package, she instructs participants on the mechanics of forming a corporation sole and using the entity to conceal assets and income.  (Allan Decl. ¶ 14.)  She also handles the filing of the corporation sole paperwork with various state corporation commissions.  (Lloyd Dep. 36:14-36:25.) In the event that tax returns are filed by a participant, Ms. Lloyd advises them that any donations made to a corporation sole can be deducted on the participant's federal tax returns.  (Allan Decl., Ex. A at 57.)  She also tells participants that if their residences or real estate holdings are titled in the name of their corporation sole, then they can use this property as a tax-exempt parsonage.  (Allan Decl. ¶ 17.)  Thus, the corporation sole can provide the participant with tax-exempt housing or a tax-exempt housing allowance.  Id.

Ms. Lloyd is also involved in the marketing of FPC's claim of right program. This program involves filing erroneous income tax returns and/or erroneous claims for refund.  (Allan Decl. ¶ 21.)   As part of this promotion, Ms. Lloyd asserts that taxpayers have a common law right to exclude from taxation all compensation for personal services or labor.  (Allan Decl., Ex. A at 19.)  According to the FPC website, the claim of right package "is used to claim that compensation for

5

personal labor may be excluded from taxation." (Allan Decl., Ex. A at 23.) Ms. Lloyd also asserts that I.R.C. §§ 183, 212, and 1341 codify this alleged common law right and entitle participants to take a deduction in the amount of compensation earned. (Cantrell Decl., Ex. A at 8.) In most cases, this deduction eliminates a participant's entire tax liability. (Allan Decl., Ex. A at 22.) As part of the claim of right program, FPC advises participants to claim an itemized deduction to offset wages reported on W-2 forms or to take a Schedule C deduction to offset any net income from self-employment. (Cantrell Decl., Ex. A at 9.)

Participants in the claim of right program pay $1,095 for the first year, $250 for additional years, and 25% of each tax refund above the first $1,000 received. (Allan Decl. ¶ 22; Lloyd Ans. ¶ 19.) They must also furnish FPC with their personal tax information, including tax returns, so that the returns can be modified to conform to the tax program. (Allan Decl., Ex. A at 25-26.) According to FPC, "[t]his program allows one to get a refund of all taxes (including Social Security, Medicare, etc.) withheld from paychecks. This is the only lawful approach to eliminating the IRS from your life." (Allan Decl., Ex. A at 17.) FPC promotional materials also state that FPC "will assist clients [to] correct their 1040 (1040X) returns for new and existing members in such a way that they may receive back all federal withholding taxes and Social Security/Medicare overpayments." (Allan Decl., Ex. A at 19.)

FPC promotional materials also state that "this program is in strict adherence

6

to I.R.C. Code" and "this program is in compliance with I.R.C. rules and regulations." (Allan Decl., Ex. A at 29, 20.) The IRS has disallowed the claim of right deductions on Ms. Lloyd's income tax returns for the years 1997 through 2001. (Allan Decl. ¶ 23.) The IRS has also assessed frivolous return penalties against her for each of those returns. Id.

Since April of 2003, the IRS has recognized and referred to its Frivolous Return Program at least 1,944 frivolous returns or claims that FPC has prepared or filed on behalf of its customers. (Declaration of IRS Technical Advisor Shauna Henline ¶ 5.) FPC customers have been located in more than forty states and their claimed refunds or frivolous deductions total over $39.5 million. (Henline Decl. ¶¶ 6, 7.) Thus far, the IRS has completed audits of 285 FPC customers which have resulted in additional tax assessments of $5,142,163, exclusive of penalties and interest. (Henline Decl. ¶ 9.)

II.

Summary judgment is appropriate only when there is no genuine issue of any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Material facts are those facts identified by the controlling law as essential elements of the claims asserted by the parties. Thus, the materiality of a fact depends on whether the existence of that fact could cause a jury to reach a different outcome. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Cox v. County of Prince William, 249 F.3d 295, 299 (4th Cir. 2001). A genuine

7

issue of material fact exists if the evidence is sufficient for a reasonable trier of fact to find in favor of the nonmoving party. Anderson, 477 U.S. at 248. There is no genuine issue of material fact if the nonmoving party fails to make a sufficient showing on an essential element of its case as to which it would have the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

In evaluating a motion for summary judgment, the court must view the facts and the inferences reasonably to be drawn from them in the light most favorable to the nonmoving party. See Fed. R. Civ. P. 56(e). Summary judgment requires a determination of the sufficiency of the evidence, not a weighing of the evidence. Anderson, 477 U.S. at 249. In essence, the analysis concerns "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52. The party opposing the motion may not rest upon its pleadings but must instead provide evidence or point to evidence already on the record that would be sufficient to support a jury verdict in its favor. Id. at 248.

### III.

The United States asserts that Ms. Lloyd is engaging in conduct subject to penalty under I.R.C. § 6700. Specifically, the Government alleges that the defendant is using the corporation sole and claim of right programs in order to assist her customers in evading federal taxes. The Government requests that Ms. Lloyd be permanently enjoined under I.R.C. § 7408 and § 7402(a) from violating

I.R.C. § 6700 and § 6701. An injunction under I.R.C. § 7408 is warranted if a court finds that (1) the person has engaged in conduct subject to penalty under § 6700 or § 6701 and (2) injunctive relief is necessary to prevent the recurrence of such conduct. I.R.C. § 7408(b).

I.R.C. § 6700 imposes a penalty on any person who participates in the organization and/or sale of any shelter, plan, or arrangement and makes false statements about the tax benefits of the arrangement that the person knows or has reason to know are false or fraudulent as to any material matter. I.R.C. § 6700. To establish that Ms. Lloyd engaged in conduct subject to penalty under § 6700, the United States must show: (1) that Ms. Lloyd organized or sold (or participated in the organization or sale of) an entity, plan or arrangement; (2) Ms. Lloyd made or caused to be made false or fraudulent statements concerning the tax benefits to be derived from the arrangement; (3) Ms. Lloyd knew or had reason to know that the statements were false or fraudulent; and (4) the false or fraudulent statements pertained to a material matter. United States v. Estate Pres. Servs., 202 F.3d 1093, 1098 (9th Cir. 2000); United States v. Campbell, 897 F.2d 1317, 1320 (5th Cir. 1990); see also United States v. Kaun, 827 F.2d 1144, 1149 (7th Cir. 1987) ("Under Section 6700, the government must prove that the defendant was involved in an "abusive tax shelter": that is, any entity whose principal purpose is the avoidance or evasion of federal income tax.").

**A.**

9

There is no question that Ms. Lloyd organized and sold a plan or arrangement in this case. As a member of a network of FPC subpromoters, Ms. Lloyd actively markets the corporation sole and claim of right programs through seminars, conference calls, and on her website. Moreover, Ms. Lloyd's customers must pay substantial fees to participate in the corporation sole and claim of right programs and Ms. Lloyd receives a portion of these fees as a commission.

Ms. Lloyd has made a number of false or fraudulent statements concerning the tax benefits of the corporation sole program. Among other things, she claims that a corporation sole is tax exempt even when it is used for a participant's personal benefit. She also tells FPC customers that they can transfer their property and businesses to a corporation sole and then control and use the assets and income from that property for their own personal benefit without paying taxes on it. In FPC promotional material, Ms. Lloyd states that participants can assign their income to a corporation sole as a means of avoiding individual income taxes. Ms. Lloyd also advises that the tax exempt status of a corporation sole cannot be challenged by the Government.

To receive tax exempt status, an entity must qualify as a religious or charitable organization under I.R.C. § 501(c)(3). To do so, the entity must operate for one or more of the specific exempt purposes defined in I.R.C. § 501(c)(3).[5]

---

[5] The exempt purposes are: religious, charitable, scientific, testing for public safety, literary, educational, and the prevention of cruelty to children or animals. I.R.C. § 501(c)(3).

However, Ms. Lloyd tells participants that a corporation sole can be used for any purpose. Furthermore, an organization is not tax exempt under I.R.C. § 501(c)(3) unless it serves a "public rather than a private interest." 26 C.F.R. 1.501(c)(3)-1(d)(1)(ii). It cannot be organized or operated "for the benefit of private interests such as designated individuals, the creator or his family, shareholders of the organization . . . ." Id. Moreover, an organization is not tax exempt if its net earnings "inure in whole or in part to the benefit of private shareholders or individuals." 26 C.F.R. 1.501(c)(3)-1(c)(2). A corporation sole, as marketed by Ms. Lloyd, is established exclusively for the benefit of its founder.

It is also well settled that a taxpayer must include compensation for personal services in his or her gross income even though the taxpayer has assigned that income to another. Helvering v. Eubank, 311 U.S. 122 (1940); Lucas v. Earl, 281 U.S. 111, 115 (1930) ("[T]ax [can] not be escaped by anticipatory arrangements and contracts however skillfully devised to prevent the salary when paid from vesting even for a second in the man who earned it."). Contrary to Ms. Lloyd's assertions, a taxpayer simply cannot divert his or her income to a corporation sole and then treat that income as tax exempt without first paying taxes on that income. Id. Similarly, a taxpayer cannot deduct "contributions" to a religious contribution or charity that the taxpayer owns and controls. I.R.C. § 170(c)(2)(c); Estate Pres. Servs., 202 F.3d at 1101-02. Finally, despite Ms. Lloyd's contention that the government cannot challenge the tax exempt status of a corporation sole,

11

it is proper for the IRS to take steps to ensure that an organization's tax exempt status is appropriate and not abused. See, e.g., Branch Ministries v. Rossotti, 211 F.3d 137, 141-42 (D.C. Cir. 2000); Church of Scientology of Ca. v. C.I.R., 823 F.2d 1310, 1321 (9th Cir. 1987); Universal Life Church, Inc. v. United States, 13 Cl. Ct. 567, 580 (1987) ("It is not within this court's purview to judge in this motion the legitimacy of plaintiff's religion. However, it is legitimate for the court to decide plaintiff's status under I.R.C. § 501(c)(3). Exemption from taxation as a church is not a right, but a matter of legislative grace.") (citations omitted).

Ms. Lloyd has also made false and fraudulent statements in connection with the claim of right program. First of all, she claims that participants have a right to exclude compensation for personal services or labor from taxation. Ms. Lloyd maintains that participants can take a "claim of right" deduction on their federal income tax returns in the amount of compensation earned from personal services or labor based on I.R.C. §§ 183, 212, and 1341. However, none of these sections provide for the type of deduction that Ms. Lloyd is promoting.[6] The claim of right

---

[6] I.R.C. § 1341 applies to the narrow situation in which a taxpayer properly reports income in one year and later repays all or a portion of this income in a later year because the taxpayer did not have an unrestricted right to that income. I.R.C. § 183 prohibits an individual taxpayer from deducting expenses attributable to activity that is not engaged in for profit. "Activity not engaged in for profit" refers to all activities other than those for which deductions are allowable under § 212. I.R.C. § 212 allows for the deduction of expenses associated with the production of income or for the management, conservation or maintenance of property held for the production of income. In short, there is no section of the Internal Revenue Code providing that a taxpayer can deduct compensation received as a result of the rendering of labor or personal services.

12

program is simply yet another variation on the frivolous tax protestor argument that wages are not income. "Indeed, this argument has been rejected as many times as it has been asserted." Abdo v. United States Internal Revenue Service, 234 F.Supp.2d 553, 563 (M.D.N.C. 2002). See, e.g., Peth v. Breitzmann, 611 F.Supp. 50, 53 (E.D. Wis. 1985) ("No court has ever accepted this argument for the purpose of determining taxable income. Indeed, it has always been rejected. For once and for all, wages are taxable income.") (citations omitted). Ms. Lloyd also claims that the claim of right program is in compliance with the Internal Revenue Code. However, as noted earlier, this program (like the corporation sole program) has been identified by the IRS as a tax scam which taxpayers are urged to avoid.

Ms. Lloyd knew or had reason to know that her statements concerning the tax consequences of the corporation sole and claim of right programs were false and fraudulent. The legislative history of I.R.C. § 6700(a)(2)(A) indicates that the "reason to know" standard "allow[s] imputation of knowledge so long as it is commensurate with the level of comprehension required by the speaker's role in the transaction." Estate Pres. Servs., 202 F.3d at 1103 (quoting United States v. Campbell, 897 F.2d 1317, 1321-22 (5th Cir. 1990)). As FPC's National Support Director and as an FPC subpromoter, Ms. Lloyd most certainly had reason to know that her statements were false. The positions she took regarding the tax benefits of the corporation sole and claim of right programs have been repeatedly rejected by the courts. See United States v. White, 769 F.2d 511, 515 (8th Cir. 1985)

13

(person knew or had reason to know of false or fraudulent statements because such statements had been consistently rejected by courts). Furthermore, Ms. Lloyd is an educated and capable person as evidenced by the considerable effort she has put into researching and writing her briefs in this case. A much less extensive research effort would have revealed to her the frivolous nature of both the claim of right and corporation sole programs. See Schiff v. United States, 919 F.2d 830, 834 (2d Cir. 1990) ("the average citizen knows that the payment of income taxes is legally required").

Finally, Ms. Lloyd's false statements are also material. "Material matters are those which would have a substantial impact on the decision-making process of a reasonably prudent investor and includes matters relevant to the availability of a tax benefit." United States v. Campbell, 897 F.2d 1317, 1320 (5th Cir. 1990). The representations made by Ms. Lloyd concerning the alleged tax benefits of the corporation sole and claim of right programs most certainly affected the decision-making process of her customers. Statements pertaining to the "availability of tax deductions, credits, or to other mechanisms for reducing tax liability . . . clearly qualify as material within the meaning of § 6700." United States v. Estate Pres. Servs., 38 F.Supp.2d 846, 855 (E.D. Ca. 1998). The United State has provided sufficient evidence to show that Ms. Lloyd has engaged in conduct subject to penalty under I.R.C. § 6700 in this case.[7]

---

[7] The Government also contends that Ms. Lloyd's conduct is subject to penalty under I.R.C. § 6701. Section 6701(a)(3) imposes a penalty on any person

14

**B.**

Ms. Lloyd has clearly engaged in conduct that is subject to penalty under I.R.C. § 6700. Therefore, injunctive relief is appropriate under I.R.C. § 7408 if the defendant is reasonably likely to violate I.R.C. § 6700 again. See United States v. Kaun, 827 F.2d 1144, 1149 (7th Cir. 1987) (district court did not abuse its discretion "in finding that [the defendant] was reasonably likely to violate § 6700 again"). Courts consider the following five factors in making this determination: (1) the gravity of the harm caused by the offense; (2) the extent of the defendant's participation and her degree of scienter; (3) the isolated or recurrent nature of the infraction and the likelihood that the defendant's customary business activities might again involve her in such a transaction; (4) the defendant's recognition of her own culpability; and (5) the sincerity of her assurances against future violations. United States v. Raymond, 228 F.3d 804, 813 (7th Cir. 2000).

All five of these factors weigh in favor of entering a permanent injunction in this case. Ms. Lloyd's activities have caused significant harm to the United States Treasury. It is unlikely that the Government will be able to collect all of the back

---

who aids or assists in the preparation of any portion of a return, affidavit, claim or other document and "knows that such portion (if so used) would result in an understatement of the liability for tax of another person." I.R.C. § 6701(a)(3). A person must have acted with "actual knowledge" to be subject to penalty under I.R.C. § 6701(a)(3). Mattingly v. United States, 924 F.2d 785, 791 (8th Cir. 1991). It is not clear that the United States has presented sufficient evidence to find that Ms. Lloyd acted with actual knowledge in its Motion for Summary Judgment. However, it is unnecessary to reach this issue as there is sufficient evidence to find that her conduct is subject to penalty under § 6700 and thus an injunction is warranted under § 7408.

taxes, penalties and interest resulting from the frivolous returns filed by purchasers of the corporation sole and claim of right programs. See United States v. Savoie, 594 F.Supp. 678, 682 (W.D. La. 1984) ("[A]ctions against those following [the defendant's] plans would entangle the Government in a maze of lawsuits."). Even if the Government is able to do so, the process of identifying, auditing and collecting these taxes from FPC participants will be costly and burdensome. As National Support Director and as an FPC subpromoter, Ms. Lloyd's participation in the organization, marketing and sale of the corporation sole and claim of right programs was extensive. She testified during her deposition that she spent 30 to 40 hours a week on FPC matters. She also had reason to know that her activities were illegal given that both the corporation sole and the claim of right programs have been rejected by the IRS and a number of courts as frivolous tax positions.

It is also likely that Ms. Lloyd will continue her activities unless she is enjoined from doing so. She has never acknowledged the illegality of her conduct, nor has she denied any of the factual allegations against her. Instead, Ms. Lloyd has chosen to respond to this lawsuit with a series of frivolous filings challenging the authority of the court system and the United States government. A permanent injunction is therefore appropriate in this case under I.R.C. § 7408.

**C.**

This Court is also authorized to enter an injunction pursuant to I.R.C. § 7402(a). This section allows a district court to enter an injunction "as may be

16

necessary or appropriate for the enforcement of the internal revenue laws." I.R.C. § 7402(a). "[T]here need not be a showing that a party has violated a particular Internal Revenue Code section in order for an injunction to issue [under § 7402(a)]." United States v. Ernst & Whinney, 735 F.2d 1296, 1300 (11th Cir. 1984). A preliminary injunction under I.R.C. § 7402(a) is governed by the same standard as a preliminary injunction under Rule 65 of the Federal Rules of Civil Procedure. United States v. Bell, 238 F.Supp.2d 696, 699 (M.D. Pa. 2003). The court must evaluate four factors: (1) the likelihood that the plaintiff will sustain irreparable injury as a result of the defendant's conduct; (2) the likelihood of harm to the defendant if a permanent injunction is entered; (3) the likelihood the plaintiff will ultimately prevail on the merits; and (4) the public interest. Id.

In Ms. Lloyd's case, a permanent injunction is also warranted under I.R.C. § 7402(a). All four of the above factors weigh in favor of granting a permanent injunction. As discussed previously, the United States is sustaining irreparable harm as a result of Ms. Lloyd's conduct. FPC customers have asserted claims for frivolous refunds or deductions in an amount totaling over $39.5 million. Therefore, a permanent injunction in this case would also further the interests of the public. Moreover, Ms. Lloyd will not sustain any irreparable harm by simply being required to obey the law (i.e., to refrain from selling abusive tax shelters or to engage in any other conduct that violates I.R.C. § 6700 or § 6701). It is also highly likely that if this case were to proceed to trial, the Government would prevail

17

on the merits. Thus, a permanent injunction is also warranted under I.R.C. § 7402(a).

IV.

Accordingly, plaintiff United States of America's Motion for Summary Judgment [Doc. # 13] will be GRANTED and defendant Nancy E. Lloyd's Motion to Dismiss [Doc. # 16] will be DENIED. Ms. Lloyd's Motion for the Court to Take Judicial Notice [Doc. # 20] will be dismissed as MOOT. Defendant Nancy E. Lloyd will be permanently enjoined from violating I.R.C. § 6700 and § 6701. A hearing would not aid the decisional process in this case and is, therefore, unnecessary.

This the day of December 5, 2005

    /s/ N. Carlton Tilley, Jr.
    United States District Judge